**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| SCHOOL SPECIALTY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No.  4:17-cv-2800 |
| ANNE FARROW, | ) | |
| Serve at: | ) | |
| 612 River Moss Drive | ) | JURY TRIAL DEMANDED |
| Saint Peters, MO 63376-5338 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| OFFICE ESSENTIALS, INC. | ) | |
| Serve at Registered Agent: | ) | |
| James H. Porter | ) | |
| 1834 Walton Rd. | ) | |
| St. Louis, MO 63114 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>**VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**</u>

Plaintiff School Specialty, Inc. ("Plaintiff" or "SSI"), by and through its undersigned counsel, for its cause of action against Anne Farrow ("Farrow") and Office Essentials, Inc. ("OEI") (collectively "Defendants") states as follows:

<u>**NATURE OF THE CASE**</u>

1.      School Specialty, Inc. is a national supplier of educational products, ranging from classroom furniture and pencils to 3D printers.  SSI sells and distributes these products directly to schools and school districts around the country, and its business is heavily reliant on its salesforce.

2.      Until recently, Defendant Farrow served as a Territory Sales Manager for SSI. Farrow served in this capacity since November 2016.  As a Territory Sales Manager, Farrow was

primarily responsible for soliciting and servicing business from schools and school districts in the St. Louis, Eastern Missouri, and Southeastern Illinois regions.

3.      Farrow was hired by SSI starting on March 23, 2015.  Prior to her position as Territory Sales Manager, Farrow served as an Account Manager.

4.      Given Farrow's history soliciting and servicing SSI's customers in these regions, Farrow had regular access to SSI's confidential information and trade secrets, such as customer lists, pricing policies, and marketing plans and strategies, among other things.

5.      This information would harm SSI's business interests if in the hands of a direct competitor like OEI.  Specifically, this information would allow OEI to target SSI's current customer base, which in many instances took years to develop, and undercut SSI's pricing, marketing, and product offerings. Thus, as a term and condition of her employment with SSI, Farrow signed an agreement containing certain restrictive covenants.

6.      On March 31, 2017, Farrow resigned her employment at SSI and, thereafter, began an employment relationship with OEI.  She then engaged in the exact conduct prohibited by her restrictive covenants.  Farrow has ignored at least two demands that she avoid and cease all such conduct in violation of her agreement.

7.      Further, SSI has informed OEI of Farrow's post-employment legal and contractual obligations to SSI. However, upon information and belief, OEI has encouraged and continues to encourage Farrow to violate these obligations.

8.      Accordingly, SSI asks this Court to enter a temporary restraining order and preliminary injunction specifically prohibiting Farrow from soliciting or servicing the Restricted Customers specified in her agreement. Further, SSI asks this Court to enter a temporary restraining

order and preliminary injunction specifically prohibiting OEI from encouraging Farrow to violate her agreement.

## PARTIES

9.      SSI is organized under the laws of the State of Wisconsin with its principal place of business in Greenville, Wisconsin. SSI is licensed to do business in the State of Missouri

10.      Farrow is an individual who currently resides at 612 River Moss Drive, Saint Peters, MO 63376.

11.      OEI is organized under the laws of the State of Missouri with its principal place of business in St. Louis, Missouri.

## JURISDICTION AND VENUE

12.      This Court has original subject-matter jurisdiction over this civil action under 28 U.S.C. § 1332 in that there is complete diversity of citizenship between SSI and Defendants, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

13.      This Court has jurisdiction over Farrow because she resides in and is a citizen of the State of Missouri.

14.      This Court has jurisdiction over OEI because it is organized under the laws of the State of Missouri with its principal place of business in Missouri.

15.      Venue is appropriate in this Court under 28 U.S.C. § 1391, in that both defendants are residents of this judicial district.

## **FACTUAL BACKGROUND**

A.     <u>Background</u>

16.     SSI is engaged in the highly competitive business of marketing and selling over 110,000 educational products from the most trusted brands nationwide, including Crayola, 3M, Elmer's and its own proprietary brands such as Childcraft, Sax, EPS, Califone, and Frey, among others. SSI's team of researchers, content developers, product designers and both current and former educators, continuously design and develop unique educational products – school supplies, standards-based curriculum and supplemental learning resources, furniture and more – to help educators meet the evolving needs of all their students. SSI sells and distributes these products directly to schools and school districts around the country, and its business is heavily reliant on its salesforce.

17.     SSI's customers are located throughout the United States.

18.     SSI's business depends on its employees to develop and maintain deep relationships with its customers. In addition, SSI creates and maintains a significant amount of confidential information regarding its customers, suppliers, and products that enables SSI to provide products and services that meet its customers' needs. SSI invests substantial time, money, and effort developing and maintaining relationships with its customers as well as developing, compiling, and maintaining confidential information regarding its customers, suppliers, and products.

19.     The confidential information SSI has developed includes proprietary information including but not limited to new products, customer lists, pricing policies, employment records and policies, operational methods, marketing plans and strategies, product development techniques

and plans, business acquisition plans, methods of manufacture, designs, inventions, research programs and results, and source code. (hereinafter "Confidential Information").

20.     The trade secrets SSI has developed includes formulas, patterns, compilations, programs, methods, techniques, and processes for marketing and selling educational products to schools and school districts (hereinafter "Trade Secrets").

21.     SSI has invested considerable time and expense in developing and maintaining its Confidential Information and Trade Secrets, which gives SSI a competitive advantage and is not known or readily ascertainable outside SSI.

22.     SSI has engaged in efforts that are reasonable under the circumstances to maintain the confidentiality and secrecy of its Confidential Information and Trade Secrets.

23.     Among other things, SSI requires employees to sign an agreement pursuant to which they agree to maintain the confidentiality of SSI's Confidential Information and Trade Secrets and further to not use that information to compete with SSI.

B.      Farrow's Employment with SSI

24.     In March 2015, Farrow began working for SSI as an Account Manager. In November 2016, SSI promoted her to the role of Territory Sales Manager, making her responsible for soliciting and servicing business from schools and school districts in the St. Louis, Eastern Missouri, and Southeastern Illinois regions.

25.     Farrow's positions at SSI afforded her access to SSI's customer lists and allowed her to become well-educated on its pricing policies and marketing plans and strategies.

26.     As an Account Manager and Territory Sales Manager, Farrow interfaced with schools and school districts for the purpose of eventually selling them products provided by SSI.

27.     Farrow had extensive and repeated contacts with SSI customers, who are located throughout Southern Illinois and Missouri.

28.     Farrow was also given access to and used SSI's Confidential Information and Trade Secrets in order to sell its products and services to current and potential customers.

29.     On March 31, 2017, Farrow resigned her employment at SSI and thereafter began an employment relationship with OEI.

## C.     Farrow Agreed to Certain Restrictive Covenants

30.     On March 17, 2015, for and in consideration of Farrow's commencement of employment with SSI, access to its Confidential Information and Trade Secrets, and access to SSI customers, Farrow signed an agreement applicable to her employment with SSI (the "Agreement"). A true and correct copy of this agreement is attached as Exhibit 1 and its contents are incorporated herein by reference.

31.     The Agreement contains confidential information and non-solicitation provisions, among other obligations, which provide that:

**<u>Confidentiality Obligations</u>**

During the term of Employee's employment, the Company will provide the Employee with access to valuable Confidential Information and/or Trade Secret information relating to the Company and its Customers, defined herein, which the Company has a legitimate interest in protecting from disclosure to competitors or the public. In exchange for this access to Confidential Information or Trade Secret information, the Employee will not during the term of his/her employment directly or indirectly use or disclose any Confidential Information or Trade Secret except in the interest and for the benefit of the Company. After the termination of Employee's employment with the Company, Employee will not directly or indirectly use or disclose any Trade Secret Information as defined by the applicable law, unless such information ceases to be deemed a Trade Secret by means of one of the exceptions set forth below. For a period of twelve (12) months following termination of Employee's employment with the Company, Employee will not directly or indirectly use or disclose any Confidential Information relating to the business of the Company unless such information ceases to be deemed Confidential Information by means of one of the exceptions set forth below. The term

"Confidential Information" shall mean all non-Trade Secret or proprietary information including but not limited to new products, customer lists, pricing policies, employment records and policies, operational methods, marketing plans and strategies, product development techniques and plans, business acquisition plans, methods of manufacture, technical processes, designs, inventions, research programs and results, and source code. Notwithstanding the foregoing, the terms "Trade Secret Information: "Trade Secrets" and "Confidential Information" shall not include, and the obligations set forth in this Agreement shall not apply to, any information which: (i) can be demonstrated by Employee to have been known by him/her prior to his/her employment by the Company; (ii) is or becomes generally available to the public through no act or omission of Employee; (iii) is obtained by Employee in good faith from a third party who discloses such information to Employee on a non-Confidential basis without violating any obligation of Confidentiality or secrecy relating to the information disclosed; or (iv) is independently developed by Employee outside the scope of his/her employment without use of Confidential Information or Trade Secrets. The term "Customer" shall mean any individual or entity for whom the Company provides services or has made a proposal to perform services.

### Restrictions on Competition

During the term of the Employee's employment, the Company will provide the Employee with access to Confidential Information and /or Trade Secrets information. Moreover, the Company may provide the Employee with access to its Customers. Because of the Company's interest in protecting its investments in this information and its investment in the goodwill it has developed with its customers, the Employee shall not during the term of his/her employment with the Company directly or indirectly compete against the Company or divert or attempt to divert any Restricted Customer's business from the Company. For twelve (12) months following the termination of his/her employment with the Company, Employee agrees not to directly or indirectly solicit or attempt to solicit any business from any Restricted Customer which, in any manner, competes with the services or products offered by the Company, or to divert or attempt to divert any Restricted Customer's business from the Company. The term "Customer" shall mean any Individual or entity for whom the Company provides services or has made a proposal to perform services. The term "Restricted Customer" means any individual or entity for whom/which the Company provided services and with whom/which the Employee actually did business and had personal contact on behalf of the Company during the twelve (12) months preceding termination of Employee's employment.

32.     The Confidentiality Obligations section requires Farrow to maintain the confidentiality of and not use or disclose SSI's Confidential Information or Trade Secrets. *See* Exhibit 1.

33.     The Restrictions on Competition section requires Farrow "not to directly or indirectly solicit or attempt to solicit any business from any Restricted Customer" … "or to divert or attempt to divert any Restricted Customer's business from" SSI. The term "Restricted Customer" means any individual or entity for which SSI provided services and with which Farrow actually did business and had personal contact with on behalf of SSI during the twelve (12) months preceding the end of her employment with SSI.

34.     On June 16, 2017, SSI sent Farrow correspondence reminding her of her obligations under the Agreement. A true and correct copy of June 16, 2017 correspondence is attached as Exhibit 2 and its contents are incorporated herein by reference.

> D.     Farrow's Employment Relationship with OEI

35.     Upon information and belief, Farrow resigned her employment with SSI to begin employment with OEI.

36.     OEI directly competes with SSI by providing schools and school districts with educational products that are the same or substantially similar to those provided by SSI. In fact, OEI claims to provide "everything you need to outfit your … classroom." A true and correct copy of OEI's website is attached as Exhibit 3 and its contents are incorporated herein by reference.

> E.     Farrow Solicited Restricted Customers in Violation of the Agreement

37.     On August 9, 2017, Farrow called Oakville High School – part of the Mehlville School District – for the purpose of soliciting business away from SSI to OEI. The Mehlville School District is a Restricted Customer under the Agreement because it is an entity for which SSI provided services and with which Farrow did business and had personal contact on behalf of SSI during the twelve (12) month period prior to Farrow's resignation.

38.     Upon information and belief, Farrow used SSI's Confidential Information and Trade Secrets to solicit business away from SSI.

39.     On August 23, 2017, SSI's counsel sent a letter to Farrow advising her that her use and disclosure of SSI's Confidential Information and Trade Secrets and her solicitation of SSI's Restricted Customers is in violation of the Agreement. The letter also demanded that Farrow immediately cease all actions in violation of the Agreement. A true an accurate copy of the letter is attached hereto as Exhibit 4 and its contents are incorporated herein by reference.

40.     On August 23, 2017, SSI's counsel also sent a letter to OEI advising it of Farrow's obligations under the Agreement and that she was in violation of the Agreement. A true an accurate copy of the letter is attached hereto as Exhibit 5 and its contents are incorporated herein by reference.

41.     Neither Farrow nor OEI responded to SSI's August 2017 requests. Instead, following the August 23, 2017 correspondence, Farrow continued to use and disclose SSI's Confidential Information and Trade Secrets and solicit SSI's Restricted Customers.

42.     On October 10, 2017, SSI's counsel sent a letter to Farrow advising her that her continued use and disclosure of SSI's Confidential Information and Trade Secrets and her solicitation of SSI's Restricted Customers is in violation of the Agreement. The letter also demanded that Farrow immediately cease all actions in violation of the Agreement. The letter asked Farrow to state in writing, by October 16, 2017, that she will immediately cease all conduct in violation of the Agreement. A true an accurate copy of the letter is attached hereto as Exhibit 6 and its contents are incorporated herein by reference.

43.     On October 10, 2017, SSI's counsel sent a letter to OEI advising that Farrow's continued use and disclosure of SSI's Confidential Information and Trade Secrets and her

solicitation of SSI's Restricted Customers is in violation of the Agreement. The letter asked OEI to state in writing, by October 16, 2017, that it would direct Farrow to cease all conduct in violation of the Agreement. A true an accurate copy of the letter is attached hereto as Exhibit 7 and its contents are incorporated herein by reference.

44.     Farrow has failed to provide the requested written assurances and, other than her indication that she had previously returned SSI property, Farrow has not responded to SSI's counsel's demand. A true an accurate copy of the email is attached hereto as Exhibit 8 and its contents are incorporated herein by reference.

45.     On October 25, 2017, counsel for OEI sent a response to SSI for the first time, and in it disputed the definition of Restricted Customer as set out in Farrow's Agreement. A true an accurate copy of the October 25, 2017 correspondence is attached hereto as Exhibit 9 and its contents are incorporated herein by reference.

46.     When SSI officials attended the EDspaces 2017 conference in Kansas City, Missouri on October 25-27, 2017, various Restricted Customers reported to SSI that Farrow had solicited them on behalf of OEI.

47.     On November 6, 2017, SSI learned through a vendor email meant for Farrow but received instead by an SSI account representative that Farrow was working with that vendor to make a sale on behalf of OEI to Piney Ridge Center, located at Waynesville school district, which is a Restricted Customer.

48.     In addition to the Mehlville and Waynesville school districts, Farrow has solicited the Winfield R-4 School District, the Saul Mirowitz Jewish Community School, Youth in Need, and the Fort Zumwalt School District, among others – all of which are Restricted Customers under the Agreement – to divert business away from SSI to OEI, in violation of the Agreement.

49.     Upon information and belief, Farrow intends to continue soliciting Restricted Customers.

50.     By soliciting SSI's Restricted Customers, Farrow has breached and continues to breach the Agreement.

51.     Upon information and belief, following her separation of employment from SSI and while employed by OEI, Farrow has used SSI's Confidential Information and Trade Secrets, including customer lists and pricing policies, to compete with SSI.

52.     Upon information and belief, Farrow intends to continue using SSI's Confidential Information and Trade Secrets to compete with SSI.

53.     Upon information and belief, Farrow has used and disclosed SSI's Confidential Information and Trade Secrets, including customer lists and pricing policies, to OEI and on its behalf.

54.     Upon information and belief, Farrow intends to continue using and disclosing SSI's Confidential Information and Trade Secrets for and on behalf of OEI.

55.     By using and disclosing SSI's Confidential Information and Trade Secrets, Farrow has breached and continues to breach the Agreement.

56.     OEI is aware of Farrow's obligations under the Agreement and has unjustly benefitted from Farrow's continued use and disclosure of SSI's Confidential Information and Trade Secrets and continued solicitation of SSI's Restricted Customers, in violation of the Agreement.

57.     Upon information and belief, OEI intends to continue to unjustly benefit from Farrow's continued breach of her obligations under the Agreement.

## COUNT I – BREACH OF CONTRACT
### (Anne Farrow)

58.     SSI realleges and incorporates as if fully restated herein paragraphs 1 through 57 of its Verified Complaint.

59.     Farrow agreed to abide by the terms of the Agreement, including the Confidentiality Obligations and Restrictions on Competition.

60.     The Agreement, including the Confidentiality Obligations and Restrictions on Competition, constitutes a valid enforceable contract supported by adequate consideration.

61.     The Confidentiality Obligations and Restrictions on Competition are reasonable and no greater than fairly required to protect and preserve SSI's legitimate protectable interests, particularly its goodwill among customers and its relationships and contacts with its customers.

62.     SSI has fulfilled all of its obligations under the Agreement and all other conditions precedent to the operation of the Agreement have occurred or taken place.

63.     The conduct of Farrow described herein has caused and/or threatened to cause SSI's Restricted Customers to cease doing business with SSI and/or has reduced the volume of business they are doing with SSI and/or has caused and/or threatened to cause a loss of goodwill, thereby damaging SSI.

64.     As a direct and proximate result of Farrow's breach, SSI has suffered and will continue to suffer damages, including but not limited to, lost profits and a loss of goodwill. The continued loss of business as a result of Farrow's violation of the Agreement could lead to an ongoing substantial decrease in the volume of SSI's business.

65.     The conduct of Farrow has violated and continues to violate the legitimate protectable interests of SSI, including but not limited to, its right to protect its customer contacts and goodwill. As a result of Farrow's action, SSI is and shall continue to be adversely and

irreparably affected. Unless the injunction prayed for herein is granted, SSI will be further irreparably injured and damaged.

66.     No legal remedy can adequately protect SSI from Farrow's continuing violation of the Agreement in that, should Farrow's violations of the Agreement be allowed to continue, monetary damages will be unascertainable. If Farrow is permitted to continue to violate the Agreement, SSI's competitive advantage and profitability will be irreparably and irrevocably injured.

67.     SSI will suffer irreparable harm if Farrow is permitted to continue to use and disclose Confidential Information and Trade Secrets and contact and solicit SSI's Restricted Customers.

68.     Through the factual allegations herein, SSI has established a likelihood of success on the merits, that there exists no adequate remedy at law, and a balancing of the equities favors the entry of an injunction against Farrow.

WHEREFORE, Plaintiff School Specialty, Inc. prays for judgment in its favor and against Farrow, and for the following relief:

(a)     For entry of an Order that Farrow, and all other persons who are in active concert or participation with her or through her who receive actual notice of the Court's Order, be temporarily, preliminarily, and permanently enjoined from directly or indirectly:

1.     calling on, servicing, soliciting, encouraging, inducing, influencing, or otherwise doing business with any Restricted Customer for a period of twelve (12) months, and

2.     disclosing Confidential Information and Trade Secrets to anyone other than SSI's officers or authorized employees, or using such information for any unauthorized purpose without prior written consent of SSI.

(b)      For entry of an order that Farrow shall immediately return to SSI any and all trade secret or other confidential information or property, including all letters, notes, memoranda, documents, reports, products, and all other similar items which relate to SSI and its customers, that either Farrow obtained from SSI's files, inventories or databases, were supplied to Farrow, or generated by Farrow from SSI data and that are in Farrow's possession, custody, or control wherever located, including all reproductions or copies of such material, whether in hard-copy or electronic form, and all tangible property of SSI, that are in the possession, custody or control of Farrow or anyone acting in concert or participation with Farrow;

(c)      For an Order restraining Farrow from deleting, destroying, or otherwise duplicating or copying any of SSI's trade secret or confidential information;

(d)      For an Order requiring Farrow to maintain and preserve all computerized or other electronically stored information on any and all home or business computers, laptops, or tablets;

(e)      For entry of an award to SSI of compensatory damages for its loss of profits, lost goodwill, and loss of competitive advantage suffered prior to receiving injunctive relief in an amount to be shown in discovery;

(f)      For entry of an award to SSI of monetary damages, pre- and post-judgment interest where appropriate, damages, attorneys' fees, costs and expenses; and

(g)      For further relief as the Court deems just and reasonable.

## COUNT II – MISAPPROPRIATION OF TRADE SECRETS
### (Anne Farrow)

69.      SSI realleges and incorporates as if fully restated herein paragraphs 1 through 68 of its Verified Complaint.

70.     SSI's Confidential Information and Trade Secrets are the result of years of work developing its business and constitute trade secrets within the meaning of applicable law, including but not limited to Missouri common law and under the Missouri Uniform Trade Secrets Act.

71.     The Confidential Information and Trade Secrets acquired and developed by SSI derive independent economic value from the fact that they are not generally known to or readily accessible by the public.

72.     Farrow has unlawfully taken, utilized and disclosed SSI's Confidential Information and Trade Secrets.

73.     Farrow's relationship and/or employment with OEI creates a real threat that she will continue to use and/or disclose the Confidential Information and Trade Secrets of SSI, which threatened continued use and disclosure may be enjoined under applicable law.

74.     Farrow has used SSI's Confidential Information and Trade Secrets to assist in entering into competition with it, to grant OEI and Farrow a competitive advantage, and to advance and improve OEI and Farrow's business.

75.     Farrow's relationship and/or employment with OEI in her current capacity will lead to continued inevitable disclosure and use of SSI's Confidential Information and Trade Secrets and/or there is a real threat of misappropriation of the same.

76.     There is a substantial threat that Farrow will continue to disclose and use SSI's Confidential Information and Trade Secrets as defined under applicable law, and thereby misappropriate that Confidential Information and Trade Secrets.

WHEREFORE, Plaintiff School Specialty, Inc. prays for judgment in its favor and against Farrow, and for the following relief:

      (a)     For entry of an Order that Farrow, and all other persons who are in active concert or participation with her or through her who receive actual notice of the Court's Order, be temporarily, preliminarily, and permanently enjoined from directly or indirectly:

           1.     calling on, servicing, soliciting, encouraging, inducing, influencing, or otherwise doing business with any Restricted Customer for a period of twelve (12) months, and

           2.     disclosing Confidential Information and Trade Secrets to anyone other than SSI's officers or authorized employees, or using such information for any unauthorized purpose without prior written consent of SSI.

      (b)     For entry of an order that Farrow shall immediately return to SSI any and all trade secret or other confidential information or property, including all letters, notes, memoranda, documents, reports, products, and all other similar items which relate to SSI and its customers, that either Farrow obtained from SSI's files, inventories or databases, were supplied to Farrow, or generated by Farrow from SSI data and that are in Farrow's possession, custody, or control wherever located, including all reproductions or copies of such material, whether in hard-copy or electronic form, and all tangible property of SSI, that are in the possession, custody or control of Farrow or anyone acting in concert or participation with Farrow;

      (e)     For an Order restraining Farrow from deleting, destroying, or otherwise duplicating or copying any of SSI's trade secret or confidential information;

      (f)     For an Order requiring Farrow to maintain and preserve all computerized or other electronically stored information on any and all home or business computers, laptops, or tablets;

      (e)     For entry of an award to SSI of compensatory damages for its loss of profits, lost goodwill, and loss of competitive advantage suffered prior to receiving injunctive relief in an amount to be shown in discovery;

(f)     For entry of an award to SSI of monetary damages, pre- and post-judgment interest where appropriate, damages, attorneys' fees, costs and expenses; and

(g)     For entry of an award of punitive damages insofar as Farrow's wrongful conduct is willful, wanton, malicious, and done with the intent of causing injury.

(h)     For further relief as the Court deems just and reasonable.

### COUNT III – TORTIOUS INTERFERENCE
**(Anne Farrow)**

77.     SSI realleges and incorporates as if fully restated herein paragraphs 1 through 76 of its Verified Complaint.

78.     SSI has an ongoing business relationship with its Restricted Customers as outlined above.

79.     Farrow, by virtue of her position with SSI, was aware of SSI's relationships with those customers, and was privy to SSI's Confidential Information and Trade Secrets.

80.     Farrow had an obligation to not interfere with those relationships in accordance with the Agreement.

81.     Farrow intentionally and without justification interfered with SSI and the Restricted Customers' business relationships by contacting and soliciting the Restricted Customers to divert business away from SSI and utilizing SSI's Confidential Information and Trade Secrets in so doing.

82.     As a consequence of the foregoing, SSI has been damaged, and has suffered and will continue to suffer immediate and irreparable harm and loss.

WHEREFORE, Plaintiff School Specialty, Inc. prays for judgment in its favor and against Farrow, and for the following relief:

(a)     For entry of an Order that Farrow, and all other persons who are in active concert or participation with her or through her who receive actual notice of the Court's Order, be temporarily, preliminarily, and permanently enjoined from directly or indirectly:

    1.    calling on, servicing, soliciting, encouraging, inducing, influencing, or otherwise doing business with any Restricted Customer for a period of twelve (12) months, and

    2.    disclosing Confidential Information and Trade Secrets to anyone other than SSI's officers or authorized employees, or using such information for any unauthorized purpose without prior written consent of SSI.

(b)     For entry of an order that Farrow shall immediately return to SSI any and all trade secret or other confidential information or property, including all letters, notes, memoranda, documents, reports, products, and all other similar items which relate to SSI and its customers, that either Farrow obtained from SSI's files, inventories or databases, were supplied to Farrow, or generated by Farrow from SSI data and that are in Farrow's possession, custody, or control wherever located, including all reproductions or copies of such material, whether in hard-copy or electronic form, and all tangible property of SSI, that are in the possession, custody or control of Farrow or anyone acting in concert or participation with Farrow;

(g)     For an Order restraining Farrow from deleting, destroying, or otherwise duplicating or copying any of SSI's trade secret or confidential information;

(h)     For an Order requiring Farrow to maintain and preserve all computerized or other electronically stored information on any and all home or business computers, laptops, or tablets;

(e)     For entry of an award to SSI of compensatory damages for its loss of profits, lost goodwill, and loss of competitive advantage suffered prior to receiving injunctive relief in an amount to be shown in discovery;

(f)     For entry of an award to SSI of monetary damages, pre- and post-judgment interest where appropriate, damages, attorneys' fees, costs and expenses; and

(g)     For entry of an award of punitive damages insofar as Farrow's wrongful conduct is willful, wanton, malicious, and done with the intent of causing injury.

(h)     For further relief as the Court deems just and reasonable.

### COUNT IV – MISAPPROPRIATION OF TRADE SECRETS
#### (OEI)

83.     SSI realleges and incorporates as if fully restated herein paragraphs 1 through 82 of its Verified Complaint.

84.     SSI's Confidential Information and Trade Secrets are the result of years of work developing its business and constitute trade secrets within the meaning of applicable law, including but not limited to Missouri common law and under the Missouri Uniform Trade Secrets Act.

85.     The Confidential Information and Trade Secrets acquired and developed by SSI derive independent economic value from the fact that they are not generally known to or readily accessible by the public.

86.     OEI has unlawfully taken and utilized SSI's Confidential Information and Trade Secrets.

87.     OEI's relationship with and/or employment of Farrow creates a real threat that it will continue to use the Confidential Information and Trade Secrets of SSI, which threatened continued use may be enjoined under applicable law.

88.     OEI has used SSI's Confidential Information and Trade Secrets to assist in entering into unfair competition with it, to grant OEI and Farrow a competitive advantage, and to advance and improve OEI and Farrow's business.

89.     OEI's relationship with and/or employment of Farrow in her current capacity will lead to continued inevitable disclosure and use of SSI's Confidential Information and Trade Secrets and/or there is a real threat of misappropriation of the same.

90.     There is a substantial threat that OEI will continue to use SSI's Confidential Information and Trade Secrets as defined under applicable law, and thereby misappropriate that Confidential Information and Trade Secrets.

WHEREFORE, Plaintiff School Specialty, Inc. prays for judgment in its favor and against OEI, and for the following relief:

(a)     For entry of an Order that OEI, and all other persons who are in active concert or participation with it or through it who receive actual notice of the Court's Order, be temporarily, preliminarily, and permanently enjoined from directly or indirectly:

> 1.      calling on, servicing, soliciting, encouraging, inducing, influencing, or otherwise doing business with any Restricted Customer for a period of twelve (12) months, and

> 2.      using or disclosing Confidential Information and Trade Secrets to anyone other than SSI's officers or authorized employees, or using such information for any unauthorized purpose without prior written consent of SSI.

(b)     For entry of an order that OEI shall immediately return to SSI any and all trade secret or other confidential information or property, including all letters, notes, memoranda, documents, reports, products, and all other similar items which relate to SSI and its customers, that either OEI obtained from Farrow, were supplied to OEI, or generated by Farrow from SSI data and that are in OEI's possession, custody, or control wherever located, including all reproductions or copies of such material, whether in hard-copy or electronic form, and all tangible property of SSI, that are in the possession, custody or control of OEI or anyone acting in concert or participation with OEI;

(i)        For an Order restraining OEI from deleting, destroying, or otherwise duplicating or copying any of SSI's trade secret or confidential information;

(j)        For an Order requiring OEI to maintain and preserve all computerized or other electronically stored information on any and all computers, laptops, or tablets;

(e)        For entry of an award to SSI of compensatory damages for its loss of profits, lost goodwill, and loss of competitive advantage suffered prior to receiving injunctive relief in an amount to be shown in discovery;

(f)        For entry of an award to SSI of monetary damages, pre- and post-judgment interest where appropriate, damages, attorneys' fees, costs and expenses; and

(g)        For entry of an award of punitive damages insofar as OEI's wrongful conduct is willful, wanton, malicious, and done with the intent of causing injury.

(h)        For further relief as the Court deems just and reasonable.

### COUNT V – TORTIOUS INTERFERENCE
### (OEI)

91.        SSI realleges and incorporates as if fully restated herein paragraphs 1 through 90 of its Verified Complaint.

92.        SSI has an ongoing contractual relationship with Farrow as outlined above.

93.        OEI is and was at all relevant times aware of that relationship.

94.        OEI had an obligation not to interfere with that relationship.

95.        OEI intentionally and without justification interfered with SSI and Farrow's contractual relationship by permitting and encouraging Farrow to solicit Restricted Customers and to use and disclose SSI's Confidential Information and Trade Secrets in so doing.

96.        As a consequence of the foregoing, SSI has been damaged, and has suffered and will continue to suffer immediate and irreparable harm and loss.

WHEREFORE, Plaintiff School Specialty, Inc. prays for judgment in its favor and against OEI, and for the following relief:

(a)     For entry of an Order that OEI, and all other persons who are in active concert or participation with it or through it who receive actual notice of the Court's Order, be temporarily, preliminarily, and permanently enjoined from directly or indirectly:

> 1.     calling on, servicing, soliciting, encouraging, inducing, influencing, or otherwise doing business with any Restricted Customer for a period of twelve (12) months, and
>
> 2.     using or disclosing Confidential Information and Trade Secrets to anyone other than SSI's officers or authorized employees, or using such information for any unauthorized purpose without prior written consent of SSI.

(b)     For entry of an order that OEI shall immediately return to SSI any and all trade secret or other confidential information or property, including all letters, notes, memoranda, documents, reports, products, and all other similar items which relate to SSI and its customers, that either OEI obtained from Farrow, were supplied to OEI, or generated by Farrow from SSI data and that are in OEI's possession, custody, or control wherever located, including all reproductions or copies of such material, whether in hard-copy or electronic form, and all tangible property of SSI, that are in the possession, custody or control of OEI or anyone acting in concert or participation with OEI;

(k)     For an Order restraining OEI from deleting, destroying, or otherwise duplicating or copying any of SSI's trade secret or confidential information;

(l)     For an Order requiring OEI to maintain and preserve all computerized or other electronically stored information on any and all computers, laptops, or tablets;

(e)     For entry of an award to SSI of compensatory damages for its loss of profits, lost goodwill, and loss of competitive advantage suffered prior to receiving injunctive relief in an amount to be shown in discovery;

(f)     For entry of an award to SSI of monetary damages, pre- and post-judgment interest where appropriate, damages, attorneys' fees, costs and expenses; and

(g)     For entry of an award of punitive damages insofar as OEI's wrongful conduct is willful, wanton, malicious, and done with the intent of causing injury.

(h)     For further relief as the Court deems just and reasonable.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.


 */s/ Eric A. Todd*
Eric A. Todd, MO46919
Joshua S. Owings MO66129
7700 Bonhomme Avenue, Suite 650
St. Louis, Missouri 63105
Phone: (314) 802-3935
Facsimile: (314) 802-3936
eric.todd@ogletreedeakins.com
joshua.owings@ogletreedeakins.com


**Attorneys for School Specialty, Inc.**

## **VERIFICATION**

Personally appeared before me, Timothy Ferraro, Midwest Regional Sales Manager, School Specialty, Inc., duly sworn, who deposes and states the factual matters alleged in the Verified Complaint for Injunctive and Other Relief in this action are true to the best of his knowledge, except as to those matters stated upon information and belief, and as to those matters, he believes them to be so true.

Subscribed and sworn to before me this 22nd day of Nov. , 2017.

Notary Public in and for the State of ~~Missouri~~ ILLINOIS   AC

ANGELA CAGGIANO
Official Seal
Notary Public - State of Illinois
My Commission Expires Jan 23, 2021

My commission expires: 23 Jan. 2021

31695491.1